UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREY LYABAKH,

                    Petitioner,

      v.

ICE FIELD OFFICE DIRECTOR and
BRUCE SCOTT,

                    Respondents.

CASE NO. 2:26-cv-01899-TL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Andrey Lyabakh's Petition for Writ of Habeas Corpus. Dkt. No. 1. Having reviewed the petition, Respondents' return (Dkt. No. 6), Petitioner's reply (Dkt. No. 10), and the relevant record, the Court GRANTS the petition.

## I.    BACKGROUND[1]

### A.    Parties

Petitioner is Andrey Lyabakh, a native and citizen of Ukraine. Dkt. No. 7 (Hubbard Decl.) ¶ 4. Petitioner is approximately 38 years old. *See* Dkt. No. 8-1 (Record of

---

[1] Many of the facts recounted here are based on the declaration (Dkt. No. 7) of Deportation Officer Christopher Hubbard. Hubbard does not have firsthand knowledge of these facts but, rather, claims knowledge "obtained from various records and systems maintained by DHS" (Dkt. No. 7 ¶ 3), or based on hearsay contained within narrative portions of documents in Petitioner's immigration record (Dkt. Nos. 8-1, 8-2, 8-3, 8-4, 8-5, 8-6). The Court makes no findings as to whether these are true and correct statements of fact but does note that they appear to be uncontested by the Parties.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 1

Deportable/Inadmissible Alien) at 2. Petitioner is presently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 1 at 1. Respondents[2] are "ICE Field Office Director" and Bruce Scott.

**B.      Petitioner's Immigration Background**

On or about December 30, 1996, Petitioner was admitted into the United States as an immigrant at Seattle, Washington. Dkt. No. 8-1 at 3. Petitioner's status was adjusted to lawful permanent resident retroactive to his date of entry. *See id.*

**1.      Petitioner's Removal, Appeal, and Petition for Review**

On or about March 18, 2008, Petitioner was issued a Notice to Appear ("NTA") and placed into removal proceedings. Dkt. No. 8-2 (NTA). According to the NTA, Petitioner had been convicted of two criminal offenses in state court and was subject to removal under Section 237(a)(2)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A). *See id.* at 4.[3]

On February 9, 2009, an immigration judge ("IJ") ordered Petitioner removed to Ukraine. Dkt. No. 8-3 (Record of Deportable/Inadmissible Alien) at 3. Petitioner appealed the IJ's order to the Board of Immigration Appeals ("BIA"), which dismissed the appeal. Dkt. No. 7 ¶¶ 12, 13. Petitioner then filed a petition for review with the Ninth Circuit, which denied the petition. *Id.*

---

[2] As used in this order, the term "Respondents" does not include Respondent Scott. Respondent Scott has not responded to the petition and has not appeared in this case. Further, neither Party identifies who Bruce Scott is. However, it is "generally known within the [Court's] territorial jurisdiction," Fed. R. Evid. 201(b)(1), that Scott is the warden of NWIPC, *see, e.g.*, *Hoang v. Hyde*, No. C26-1591, 2026 WL 1758650, at *2 n.2 (W.D. Wash. June 18, 2026), and the Court takes judicial notice of this fact. *See Zamora v. Frauenheim*, No. C12-943, 2015 WL 2448557, at *1 n.1 (E.D. Cal. May 20, 2015) (taking judicial notice of the "identity of the warden" of the relevant facility in a habeas petition).

[3] Petitioner concedes that he has a "criminal history" (Dkt. No. 10 at 4), and Respondents recite this history in scrupulous detail (*see* Dkt. No. 6 at 4–5). But beyond the fact that Petitioner's convictions form the basis for his removal, the details of his criminal history are irrelevant for the purposes of deciding the instant petition. *See infra* Section III.C. Accordingly, the Court omits the details from this Order. *See, e.g.*, *Tanahan v. United States*, No. C25-2075, 2026 WL 161761, at *2 n.1 (D. Nev. Jan. 21, 2026) ("declin[ing] to transform [*Zadvydas*] proceedings into an inquisition into Petitioner's criminal history").

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 2

¶¶ 14, 16–17.

### 2.    Petitioner's Detention

After the IJ ordered Petitioner's removal, Petitioner remained in detention until on or about September 16, 2009, when he was released on an Order of Supervision ("OSUP"). Dkt. No. 7 ¶ 15. Petitioner remained out of immigration detention until on or about June 14, 2013, when he was detained by ICE subsequent to an arrest by local authorities on state-law charges. *Id.* ¶¶ 18–19. Petitioner was then detained at NWIPC until October 7, 2013, when he was again released on an OSUP. *Id.* ¶ 20.

On September 5, 2025, "[a] removal flight via commercial air was scheduled for Petitioner," but "Petitioner did not appear for the departure flight." *Id.* ¶ 22. It is unclear from the record what the final destination of the removal flight was, or whether Petitioner ever received notice that any flight had been scheduled.[4]

On March 25, 2026, Petitioner was arrested on state-law charges in Idaho by the Idaho State Police and booked into the Kootenai County Jail. *Id.* ¶ 23. ICE lodged a detainer, and on April 10, 2026, Petitioner was transferred from state custody to ICE custody. *Id.* Petitioner was moved to NWIPC, where he has remained ever since. *Id.* ¶ 25.

On or about April 14, 2026, ICE began efforts to effectuate Petitioner's removal. First, ICE submitted a Travel Document request to agency headquarters for review. *Id.* ¶ 26. On or about May 5, 2026, ICE submitted the request to the Embassy of Ukraine. *Id.* ¶ 27. ICE sought updates from the Ukrainian Embassy three times—on May 11, 2026, May 19, 2026, and May 28, 2026—but does not appear to have received any response. *Id.* ¶ 28. On or about June 16, 2026, ICE sent a second request to the Embassy of Ukraine. *Id.* ¶ 29.

---

[4] There is no indication in the record that a Ukrainian travel document has ever been obtained for Petitioner.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 3

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III.    DISCUSSION[5]

As a noncitizen with a final order of removal, Petitioner is detained under 8 U.S.C. § 1231. Under Section 1231(a)(1), "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(2) mandates the detention of the noncitizen during the removal period, *id.* § 1231(a)(2)(A), and Section 1231(a)(6) authorizes the continued detention of certain noncitizens after the expiration of the removal period. Although there is no explicit temporal limit on the length of detention in the statute, the Supreme Court has held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal under Section 1231(a)(6), even those with serious criminal backgrounds, *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001), instead construing the statute to contain an "implicit 'reasonable time' limitation," *id.* at 682. "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized

---

[5] In considering the petition, the Court considers arguments that Petitioner has raised for the first time in his reply brief. *Compare* Dkt. No. 10, *with* Dkt. No. 1. "[A] district court has discretion, but is not required, to consider evidence presented for the first time" after a habeas petitioner's original filing of their petition. *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002) (quoting *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000)). This includes argument "raised only in the traverse" of a habeas petition. *Jackson v. Roe*, 425 F.3d 654, 656 n.1 (9th Cir. 2005). At the time Petitioner filed his original petition, he was proceeding pro se. In the Ninth Circuit, "[p]ro se habeas petitioners are to be afforded 'the benefit of any doubt[.]'" *Brown*, 279 F.3d at 746 (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).

six months as that time limitation. *Id.* at 701.

Ultimately, the Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* However, "[a]fter this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *See id.* Further, "as the prior period of postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Additionally relevant here, courts have held that "where a petitioner has been detained and released by ICE multiple times after a final order of removal, 'the clock' on *Zadvydas*'s six-month period of presumptive reasonability does not re-start with each successive detention." *Do v. Scott*, No. C25-2187, 2025 WL 3470327, at *2 (W.D. Wash. Dec. 3, 2025) (quoting *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721 (W.D. Wash. 2025)); *see Quang Vinh Huynh v. Marin*, No. C26-2405, 2026 WL 1772734, at *2 (C.D. Cal. June 16, 2026) (collecting cases). That is, when determining whether the six-month *Zadvydas* threshold has been cleared, the Court aggregates discontinuous stretches of post-removal-order detention to calculate how long a noncitizen has been detained.

**A.    Presumptively Reasonable Period of Detention**

Here, the record indicates that Petitioner has been subjected to more than six months of post-removal-order detention. On June 19, 2009, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal of his removal order, thus rendering the IJ's order of removal administratively final. *See* Dkt. No. 7 ¶ 13; 8 C.F.R. § 1241.1(a).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 5

On June 13, 2013, Petitioner was taken into ICE custody; he was detained for 117 days, until October 7, 2013. Dkt. No. 7 ¶¶ 18–20. On April 10, 2026, Petitioner was again taken into ICE custody. *Id.* ¶ 24. Petitioner remains detained, and as of the date of this Order, Petitioner's second stretch of detention has lasted 82 days. In the aggregate, then, Petitioner's post-removal-order detention has lasted more than six months; it is no longer presumptively reasonable. *See Zadvydas*, 533 U.S. at 701.

**B.      Significant Likelihood of Removal in the Reasonably Foreseeable Future**

Petitioner's assertion that his "removal is not reasonably foreseeable" is somewhat conclusory, and the argument he presents in support of his position is more appropriately considered as rebuttal to Respondents' argument under the *third* prong of *Zadvydas*. *See* Dkt. No. 10 at 3. Petitioner argues that "the only evidence" of imminent removal Respondents have "is that ICE has submitted travel document *requests* and conducted follow-up outreach—but has not received any response." *Id.* Still, on the record before it, the Court agrees with Petitioner that the record does not indicate a significant likelihood of removal. Respondents have knocked and knocked on the door, but there is no indication that anyone has opened it—even a crack—or as much as responded with a "Who's there?" Indeed, Respondents' representations that they have sought documentation from Ukraine four times between May 5, 2026, and June 16, 2026, yet received no response, is more indicative of futility than future success.

Moreover, Respondents gloss over the plain fact that they have had more than *17 years* to effectuate Petitioner's removal and appear to be no closer to doing so now than they were in 2009. Other courts have found the same under similar circumstances. *See, e.g.*, *Yakoub v. Marin*, No. C26-1399, 2026 WL 922015, at *5 (C.D. Cal. Mar. 31, 2026) (finding "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" where "ICE ha[d] not secured travel documents necessary for removal despite attempts to do so

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 6

since Petitioner was ordered removed and detained in 2015" (citation modified)); *Raudel Mena P. v. Warden*, No. C26-4606, 2026 WL 1846728, at *3 (E.D. Cal. June 26, 2026) (finding no significant likelihood of removal where "Petitioner's order of removal was issued over twenty years ago, and his present detention has lasted more than five months[, and in] all that time, ICE has failed to effectuate his removal"); *Emad M.A. v. Noem*, No. C26-3432, 2026 WL 1709179, at *2 (E.D. Cal. June 12, 2026) (finding no significant likelihood of removal where Petitioner "has been under a final order of removal for eleven years" and where "government has been unable to secure Petitioner's removal during the ten months of Petitioner's latest detention"). Therefore, the Court finds that there is not a significant likelihood of removal in the reasonably foreseeable future.

## C.    Respondents' Rebuttal

Respondents have not rebutted Petitioner's showing that removal is not significantly likely. Respondents first ask the Court to reward their purported efforts to remove Petitioner, presenting the routinely rejected argument that "equate[s] 'We're trying' with 'We will.'" *Mosquera Camacho v. Hermosillo*, No. C25-2457, 2026 WL 628297, at *4 (W.D. Wash. Mar. 6, 2026) (collecting cases); *see* Dkt. No. 6 at 8–9. Respondents assert, "ICE has actively pursued removal by submitting a travel document request to the Embassy of Ukraine on April 14, 2026, conducting follow-up outreach in May 2026, and submitting a second formal request on June 16, 2026." Dkt. No. 6 at 8. What all of this means is that Ukraine has not issued Petitioner a travel document.

Granted, Respondents have added a new wrinkle to the tired argument—that, in this case, there is no evidence that Ukraine will *not* issue a travel document—but this reliance on a flawed "absence of evidence is evidence of absence" construction is unpersuasive. Respondents observe, "There is no evidence before the Court suggesting that Ukraine will refuse to issue [a travel]

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 7

document." *Id.* at 8. The Court disagrees. If two is a coincidence and three is a pattern, then Ukraine's *four* nonresponses to Respondents' requests are certainly indicative of something. Moreover, there is also no evidence before the Court suggesting that Ukraine will do (or refuse to do) anything, travel-document-related or otherwise. The Court might be persuaded by evidence that Ukraine will issue a travel document—but a lack of evidence that it won't is wholly unsubstantial.

Respondents next point to "Petitioner's criminal history and demonstrated unwillingness to comply with removal" as "support[ive] of continued detention." Dkt. No. 6 at 9. As to the criminal history, it is irrelevant to the Court's *Zadvydas* analysis. Respondents assert that "[t]hese facts demonstrate both a significant risk of flight and danger to the community, considerations the Supreme Court recognized as relevant in assessing the reasonableness of detention." *Id.* (citing *Zadvydas*, 533 U.S. at 700–01). Respondents are, without putting too fine a point on it, wrong. The *Zadvydas* court specifically stated that the "the flight risk justification evaporates" when removal is not reasonably foreseeable, and that potentially indefinite "preventive detention based on dangerousness" and removability, without any "other special circumstance" justifying civil confinement, is unconstitutional. 533 U.S. at 691. Kestutis Zadvydas himself "ha[d] a long criminal record, involving drug crimes, attempted robbery, attempted burglary, and theft. He ha[d] a history of flight, from both criminal and deportation proceedings." *Id.* at 684. If the *Zadvydas* approach applied to Zadvydas, then it most certainly applies to Petitioner. *See, e.g.*, *Majekaudunmi v. Scott*, No. C26-1026, 2026 WL 1283519, at *4 (W.D. Wash. May 11, 2026) (holding that petitioner's criminal conviction and government's continued interest in preventing flight risk do not "actually give[] insight as to whether removal is reasonably foreseeable"). Respondents' argument here—that *Zadvydas* supports the proposition that Petitioner's checkered record informs the Court's habeas inquiry—is an

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 8

inaccurate characterization of the law, and Respondents' counsel, a Washington-barred attorney and representative of the United States Government, is reminded that the duty of candor to the tribunal includes the "recogni[tion] of pertinent legal authorities." Washington Rules of Professional Conduct 3.3, cmt. 4.

\* \* \*

"Where Petitioner's detention is no longer reasonably related to removal and has become prolonged without adequate justification, it has become unlawful." *Majekaodunmi*, 2026 WL 1283519, at \*4 (citation modified); *see Zadvydas*, 533 U.S. at 701. A writ of habeas corpus is thus warranted with respect to Petitioner's ongoing detention.

### IV.   CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED. It is hereby ORDERED:

Respondent and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(1)   SHALL release Petitioner from detention **within twenty-four (24) hours** under appropriate conditions of release;

(2)   SHALL submit to the Court, **within forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

Dated this 1st day of July 2026.

Tana Lin
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 9